UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MARC ANTHONY KING,

        Plaintiff,

v.

CONNIE HORTON et al.,

        Defendants.
_____/

Case No. 2:19-cv-77

Honorable Robert J. Jonker

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Wallis and McLean. The Court will also dismiss, for failure to state a claim, Plaintiff's procedural due process claims against Defendants Harrison, Plumm, Spiker, and Horton.

**Discussion**

I.        Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden Connie Horton, Resident Unit Manager T. Corey Spiker, Corrections Officer Unknown Harrison, Corrections Officer Unknown Wallis, Prison Counselor Unknown Plumm, and Grievance Coordinator Unknown McLean.

Plaintiff alleges that on November 26, 2018, he was released from segregation to Level IV general population. Upon entering Round Unit, Plaintiff overheard Defendant Harrison tell another Corrections Officer that Plaintiff had a lot of property and that he was going to "take some big time." Defendant Harrison subsequently ordered Plaintiff to unpack all his property and then repack it. After Plaintiff complied, Defendant Harrison stated that it was amazing how much property fit in a duffel bag, but he still wanted to take some of Plaintiff's property. Defendant Harrison then instructed Plaintiff to place his typewriter in his duffel bag. Plaintiff refused, citing Policy Directive 04.07.112, which provides that typewriters shall be packed separately in an appropriate container with adequate packing materials. Defendant Harrison then told Plaintiff to have a seat because he was going to send him back to segregation.

A short time later, Defendant Harrison called a Sergeant. Plaintiff's hands were cuffed behind his back and he was told that he was going to the hole for disobeying a direct order. As they were approaching the exit, Defendant Harrison grabbed Plaintiff from behind and slammed his head into the metal door frame. Defendant Harrison stated:

> You black mothaf#ckas don't run shit at this facility. This is URF, which means you are fucked. Black people don't have shi#t coming up here. For that you won't get any of your f#cking property.

(*See* Compl., ECF No. 1, PageID.8.)

Plaintiff was placed in segregation and received a Class II misconduct. Plaintiff received a contraband removal slip created by Defendant Wallis, which listed property items that were considered excess and had been confiscated. The contraband removal slip did not include Plaintiff's television, typewriter, or footlocker. Nor did it include Defendant Wallis' printed name, signature, badge number, or date. Therefore, the contraband removal slip was incomplete and deficient.

On November 27, 2018, Plaintiff filed a grievance on Defendant Harrison for excessive force. On November 30, 2018, Plaintiff filed a grievance regarding the improper seizure of his property. Plaintiff was released from segregation on December 9, 2018, and returned to Round Unit. Upon entering the unit, Plaintiff looked in the open equipment closet and saw a plastic garbage bag containing property along with his typewriter and television.

After the administrative hearing on December 11, 2018, the list was amended to include Plaintiff's television and typewriter. Defendant Plumm showed Plaintiff the amended contraband removal slip while reviewing Plaintiff's November 30, 2018, grievance with him. The amended slip was signed by Defendant Harrison. Plaintiff's television and typewriter were stored in an unsecured equipment closet. Plaintiff asked Defendant Plumm why he had not been given the opportunity to exchange a packed allowable item with either his television or typewriter in accordance with Policy Directive 04.07.112 ¶ EE. Defendant Plumm told Plaintiff that he did not have anything coming because he had filed grievances on staff.

Defendant Plumm subsequently gave Plaintiff his typewriter, but told Plaintiff that his television was excess property and had to be destroyed. Defendant Plumm also stated that he

was going to hold on to Plaintiff's footlocker. When Plaintiff questioned these actions, Defendant Plumm stated, "Because I want to, this is what happens when you write grievances on staff in Round Unit." (Compl., ECF No. 1 at PageID.11.) As Plaintiff was leaving Defendant Plumm's office, he stated, "Don't worry about your tv, you will never see it again. You black assholes run around in gangs thinking you run something. You don't run shit here at URF." Plaintiff told Defendant Plumm that he was going to file a grievance and Defendant Plumm stated, "That is why you are not getting the tv back, you think you're smarter than us. No crack baby is smarter than us." Defendant Plumm asked Plaintiff if he really believed that "she" would go against URF staff, and noted that "she" hated "niggers" even more that Defendant Plumm. (*Id.* at PageID.11-12.) Plaintiff filed a grievance on Defendant Plumm. Later that evening, Corrections Officer Mehan returned Plaintiff's footlocker to him.

On December 18, 2018, Plaintiff wrote another grievance regarding the seizure of his television. However, the grievance was rejected by Defendant McLean. On December 19, 2018, Plaintiff's cell was ransacked by corrections officers while Plaintiff was at chow. Plaintiff discovered that all of the paperwork he had completed regarding this lawsuit had been torn up and was in the toilet. When Plaintiff asked officers why they had ransacked his cell, they told him that until he learned how things worked at URF, he would continue to have problems with staff. On December 20, 2018, Plaintiff kited Defendant McLean and asked for a step II grievance form so he could appeal the rejection of his December 18, 2018, grievance.

On December 26 and 27, 2018, Plaintiff wrote additional grievances regarding Defendants' confiscation of his property. However, Defendant McLean refused to process either of these grievances. Defendant McLean told Plaintiff that he would not go against his fellow

4

employees. Plaintiff subsequently sent a letter of complaint to the Director's office regarding Defendant McLean.

On December 27, 2018, Plaintiff saw Defendant Spiker in the chow hall and asked her if she had received his kites. Defendant Spiker told Plaintiff that she had, and that he was correct in asserting that MDOC Policy allowed him to get his television back. However, because Plaintiff had filed grievances and had "pissed off" one of Defendant Spiker's officers, she was not going to give Plaintiff his television. Defendant Spiker also told Plaintiff that if he continued to write grievances, he might find himself in "the hole" again. Plaintiff protested that Defendant Spiker could not just take his television, and Defendant Spiker said "just watch us." (*Id.* at PageID.13.)

On January 11, 2019, Plaintiff wrote a kite regarding his television. On January 16, 2018, Plaintiff wrote another grievance regarding his television. On the same date, Defendant Horton came into Plaintiff's unit and he attempted to tell her about his property. Defendant Plumm came over and asked Defendant Horton if there was a problem. Defendant Horton replied that she was just wondering why Plaintiff was trying to talk to her about "shit" she did not care about. Defendant Horton told Plaintiff that she was aware of his television and that he would not be getting it back. She told Plaintiff not to bother writing to anyone outside the prison to complain because it would only make her look bad. Defendant Horton also stated that inmates at the prison were too willing to snitch on her employees and that they would be better off snitching on prison gangs. (*Id.* at PageID.14.)

On January 18, 2019, Plaintiff spoke to Sergeant Portis about exchanging some of his property in order to get his television back. Sergeant Portis subsequently inquired on Plaintiff's behalf, but was told that Defendant Horton and Assistant Deputy Warden Corrigan had specifically

5

instructed staff not to give Plaintiff his television. On January 22, 2019, Plaintiff was called to Defendant Plumm's office to send out legal mail. Plaintiff asked if he could exchange one pair of shoes, three books, and six inches of paper for his television. Defendant Plumm responded by asking what part of "never getting your television back" did Plaintiff not understand. Defendant Plumm further asserted by referring to Plaintiff as a black crack baby, and ordering him to get his "black ass" out of the office before he got sent to the "hole." (*Id.* at PageID.15.) While Plaintiff was at lunch later that day, his cell was ransacked, items were taken, and his typewriter was broken.

On January 30, 2019, Plaintiff wrote to the Director's office to ask about his grievance regarding his television. On February 6, 2019, Plaintiff looked into the equipment closet on his way back from law the library and saw his property strewn across the floor. The garbage bag containing his property had been ripped open and many items were gone. Plaintiff immediately filed a grievance.

On February 8, 2019, Plaintiff spoke to Deputy Yun about his television. Deputy Yun told Plaintiff that his television did not fit the criteria for excess property, so it could not be taken or destroyed. Deputy Yun took a picture of Plaintiff's ID with his cell phone and said he would talk to the warden. Later that day, Deputy Yun told Plaintiff that the warden had said that Plaintiff could not have his television back because he had written grievances and sent letters of complaint to individuals outside the prison.

On February 9, 2019, corrections officers searched Plaintiff's cell and took documents that Plaintiff had prepared for this lawsuit and threw them in the garbage in the officers' station. On February 13, 2019, Plaintiff was "heard" on his grievance by Defendant Plumm, despite the fact that Defendant Plumm was a subject of the grievance. On February 15, 2019, Plaintiff's cell mate overheard Defendant Harrison tell Deputy Corrigan that "a lot of [Plaintiff's]

6

store goods are missing from the bag." Deputy Corrigan responded, "We need to hurry up and make this property matter go away or make [Plaintiff] go away." (*Id.* at PageID.16.)

On February 18, 2019, Defendant Plumm told Plaintiff that he could purchase a new television. Plaintiff submitted a disbursement for a new television which stated that the reason for purchase was because Round Unit staff would not give Plaintiff his existing television.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff asserts that Defendants violated his Fourteenth Amendment due process rights when they seized his property, including his television, and refused to return it to him in violation of MDOC policy. Plaintiff's due process claims regarding the loss of his property are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claims are premised upon allegedly unauthorized acts of state officials, he must plead and prove the inadequacy of state post-deprivation remedies. *See*

8

*Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claims regarding the loss of his property will be dismissed. Because the only claim that Plaintiff asserts against Defendant Wallis is related to the deprivation of his property without due process, the Court will dismiss Defendant Wallis from this action.

Plaintiff states that Defendant Harrison wrote a false Class II misconduct on him on November 26, 2018, and that he was subsequently placed in segregation for 13 days. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions

implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Plaintiff was found guilty of a Class II misconduct. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin*, 515 U.S. at 472; *see also Ingram*, 94 F. App'x at 273 (6th Cir. 2004) (holding that unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails).

Plaintiff claims that he was confined in segregation from November 26, 2018, until December 9, 2018, for a period of 13 days. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant"

10

hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin*, 515 U.S. at 483). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Plaintiff has failed to make any allegations showing that his segregation was "atypical and significant." Consequently, the court concludes that no liberty interest is implicated by his placement. Therefore, Plaintiff's due process claims regarding his misconduct ticket and placement in segregation are properly dismissed.

Plaintiff claims that Defendant McLean failed to properly process his grievances. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-

2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant McLean's conduct did not deprive him of due process.

Plaintiff claims that Defendant Harrison used excessive force in violation of Plaintiff's Eighth Amendment rights when he smashed Plaintiff's head against a metal doorframe while Plaintiff's hands were cuffed and he was not resisting. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.* The Court concludes that based on the allegations in his complaint, Plaintiff's Eighth Amendment claim against Defendant Harrison states a claim for relief and may not be dismissed on initial review.

Plaintiff claims that Defendants Harrison and Plumm deprived him of his television, in part, because of a desire to discriminate against black prisoners in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). The Court concludes that based on the allegations in his complaint, Plaintiff's equal protection claims against Defendants Harrison and Plumm state a claim for relief and may not be dismissed on initial review.

Plaintiff claims that Defendants Harrison, Plumm, Spiker, and Horton refused to return his television set to him in violation of MDOC policy because of a desire to retaliate against him for filing grievances and complaints. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The Court concludes that based on the allegations in his complaint, Plaintiff's retaliation claims against Defendants Harrison, Plumm, Spiker, and Horton state a claim for relief and may not be dismissed on initial review.

III. <u>Pending motions</u>

Plaintiff's pending motion for appointment of counsel (ECF No. 2) is properly denied. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989). Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's

apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.

Plaintiff's motion for a preliminary injunction and / or temporary restraining order (ECF No. 5) will also be denied. Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his Eighth Amendment claim or Equal Protection claim. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Since filing this motion, the case has proceeded without incident. There is no evidence that Defendants have engaged in any of the activities from which Plaintiff seeks to restrain them. Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary relief (ECF No. 5) will be denied.

Plaintiff's motion to compel the law librarian at his prison to make copies of his lawsuit (ECF No. 10) is based on Plaintiff's assertion that he fears prison officials will destroy any

legal material relating to this lawsuit during cell searches. However, Plaintiff fails to specify the documents he would like copied, or why they are necessary to this lawsuit. In addition, Plaintiff fails to explain how having additional copies of documents will prevent them from being destroyed by prison officials. Because Plaintiff has failed to sufficiently support this motion (ECF No. 10), it will be denied by the Court.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Wallis and McLean will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's procedural due process claims against Defendants Harrison, Plumm, Spiker, and Horton. The following claims remain in this case: Plaintiff's excessive force claim against Defendant Harrison, his retaliation claims against Defendants Harrison, Plumm, Spiker, and Horton, and his equal protection claims against Defendants Harrison and Plumm.

Plaintiff's pending motions (ECF Nos. 2, 5, and 10) will be denied.

An order consistent with this opinion will be entered.

Dated: __August 26, 2019__        /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE